### DAVIS v. BUTTERS LUMBER COMPANY.

(Filed April 15, 1902.)

JUDGMENTS—*Findings of Court—New Trial—Trial.*

Where the findings of fact of the trial judge are contradictory and irreconcilably conflicting, judgment can not be pronounced, and a new trial will be awarded.

Action by Junius Davis, as receiver of the Bank of New Hanover, against the Butters Lumber Company, heard by Judge *O. H. Allen,* at October Term, 1901, of the Superior Court of New Hanover County.    From a judgment for the plaintiff, the defendant appealed.

DAVIS *v.* LUMBER CO.

*E. S. Martin, Rountree & Carr,* and *Bellamy & Bellamy,* for the plaintiff.

*Russell & Gore,* for the defendant.

COOK, J.    Defendant drew eight several drafts in favor of plaintiff bank, upon one Burgan, residing in the city of Baltimore, and sent them to the bank, and it credited defendant with the amount, less $4.08 discount.    They were duly accepted by Burgin, but before they were paid the bank was declared to be insolvent and placed in the hands of its receiver, plaintiff Davis.    Plaintiff contends that the bank purchased said drafts for value and became the owner in its own right, while defendant contends that it deposited them for collection *only,* paying the usual discount, ¼ of 1 per cent, $4.08, for collection, and after the failure of the bank, revoked the agency to collect, and stopped the payment of the drafts.    So the legal title to the drafts is the subject of this action.    A jury trial was waived and the Judge tried the case, finding the facts and declaring the law.    His Honor, upon the facts found by him, rendered judgment in favor of plaintiff, to which there were several assignments of error and appeal by defendant.

One of the defendant's assignments of error, is that the Court erred in finding as a conclusion of law that the bank was a purchaser for value and legal owner of the drafts. Whether this assignment can be sustained or not depends upon the facts found; and by referring to them we find them found both ways.    If the facts be as set forth in the 6th finding, then this assignment must be sustained; but if they be as stated in the 8th and 9th, then it can not be.    The 6th finding is as follows:

"6. That there was no special agreement by the said bank with the defendant   *   *   *   that the drafts were taken for collection, but it was agreed to take the drafts and credit

DAVIS *v.* LUMBER CO.

them to the defendant's account, and if they came back unpaid, the bank would charge back the full amount to said account and return the drafts, and this was an agreement with all depositors of the bank.   If these drafts had not been paid according to the course of dealing between the bank and its customers, they would have been turned back to the Butters Lumber Company, but that would have been done because the Butters Lumber Company was liable on the drafts as drawer equally with the drawee Burgan."

Now, then, the general agreement being that if the drafts had been returned unpaid, then it would have charged them back to defendant and returned them to defendant drawer, it is well settled that this constitutes only an agency for collection. *Cotton Mills v. Weil,* 129 N. C., 452; *Packing Co. v. Davis,* 118 N. C., 548; *Boykin v. Bank,* 118 N. C., 566.   Surely the bank would not have returned the drafts to the drawer if it had purchased them and intended to acquire title in its own right.   If not received for collection, why surrender or return them after obtaining the acceptance by Burgan, which increased their security by reason of his acceptance and making him primarily liable?   And so, if taken for collection, then defendant had the right to revoke the agency at any time before the collection was made; which seems to have been done upon learning of the bank's insolvency.

The 8th and 9th findings are as follows:   "That the defendant understood that the title to the drafts had passed to the said bank, and that the bank had become its debtor for the net amount of the drafts after deducting the discount."   "9. That the Bank of New Hanover and the Butters Lumber Company intended at the time when the said drafts were discounted that the title to the said drafts should pass to the said bank."

So, if it be a fact that the parties intended that the drafts should become the absolute property of the payee bank, then

it could not be a fact that "they would have been turned back to the Butters Lumber Company," if they had not been paid. For it seems certain that the bank would not have voluntarily surrendered and thereby cancelled the only instrument upon which it could recover the value of its purchase.     Upon these two contradictory and irreconcilable conflicts in the findings of fact, no judgment can be pronounced.(*Morrison v. Watson,* 95 N. C., 479), therefore, it is useless for us to discuss the other questions raised.     A new trial must be had, and is, therefore, ordered.

New Trial.