Civil action. The Manufacturers Finance Company, hereinafter called Finance Company; Superior Motor Truck Company, called Truck Company; Amazon Cotton Mills Company, called Mills Company.
The plaintiff Finance Company is a corporation of Baltimore, Md., engaged in the business of commercial banking, and deals largely in commercial paper. The Truck Company were manufacturers of motor trucks in Atlanta, Ga. The defendant R. E. Zimmerman, in the year 1920, was engaged in the business of selling motor trucks and motor vehicles at Thomasville, N.C.
The Truck Company on 2 August, 1919, made what was termed a "Dealers' Agreement," also another claimed as "Agents Agreement" under Exhibit "D" duplicate, with R. E. Zimmerman, in which he had the exclusive right to sell their trucks in Davidson County and other counties in the vicinity. This agreement expired by limitation on 1 September, 1920. Also agreement between same parties dated 11 March, 1918. R. E. Zimmerman, under his contracts, purchased a certain motor truck, No. 2529, from the Truck Company, on or about 17 April, 1920, and gave a note for same, the motor company retaining title to secure the note; the title contract was duly recorded in the office of the register of deeds for Davidson County, N.C. where Zimmerman lived, and before the sale of the truck to the defendant Mills Company. (The registration was held sufficient in Finance Co. v.Cotton Mills Co., 182 N.C. 408.) Zimmerman made a promissory note dated 17 April, 1920, in the sum of $1,320, with interest from date, being the deferred payment on the truck, the title to the truck being retained by the motor company to secure the note. The truck was delivered to R. E. Zimmerman. The defendant Mills Company, on or about 12 May, 1920, before the Zimmerman note was *Page 235 
due, purchased the motor truck from R. E. Zimmerman for the sum of $3,390, paying cash $1,700, and giving in exchange a one-ton Superior Motor Truck purchased from R. E. Zimmerman, valued at $1,690. The Mills Company claimed it had no notice (except what the law established by record) of the recorded lien on the truck, and it paid full value for the truck. It further claimed that R. E. Zimmerman, in the sale of the motor truck and in collection of the purchase price therefor, acted as agent for the Superior Motor Truck Company, and its answer as a defense to plaintiff's action says: "That, as this defendant is informed and believes, R. E. Zimmerman has been acting and dealing in motor trucks as agent for the plaintiff Truck Company for more than a year past, and has been during said time the exclusive agency and dealer in said Superior Motor trucks in the county of Davidson and many other counties in the State of North Carolina, and has largely advertised as such agent, and sold many trucks, as was well known to and approved by the said Truck Company, which company furnished blanks for orders, and also other blanks and advertising matter. That the said motor company has at all times past well known and approved the way and manner in which its said agent, R. E. Zimmerman, conducted the said business, and that he sold trucks, some for cash and some on time, and collected the purchase price, and took notes for the balance due, and that he took notes in his own name and discounted them at the banks and received the money therefor; and defendant is further informed and believes that R. E. Zimmerman would turn over the money received from the sale of the said trucks to said Truck Company, which took the same, and that in this way said Truck Company has received the money paid by the defendant, and the same should be applied to any charge or account the said Truck Company may have against said R. E. Zimmerman by reason of said motor truck purchased by the defendant."
The defendant Mills Company denied that the Truck Company in due course endorsed the note in blank and sold same to plaintiff Finance Company, and the note is the property of the Finance Company.
The plaintiff Finance Company sued on the note and contract, retaining title made by R. E. Zimmerman to the Truck Company for $1,320, dated 17 April, 1920, and transferred to it by the Truck Company, and brought claim and delivery proceedings for the truck against the defendant Mills Company, and the Mills Company replevied the same.
During the trial the Truck Company took a nonsuit.
There were several issues submitted to the jury but the only one material for the consideration of this case is the third, which is as follows: "Did the Manufacturers Finance Company purchase said note *Page 236 
and contract, retaining title to the motor truck herein sued for, from the Superior Motor Truck Company for value and before maturity, in good faith and in due course of business, without notice of the claim or equity of the Amazon Cotton Mills Company, as alleged in the complaint?"
The court below gave the following instruction relating to this issue: "The court further charges that whenever a note is endorsed to another before due, the law presumes he got it in due course, and took it freed from any equities in behalf of the defendant. The law presumes that the holder of a note endorsed in blank is its holder in due course; that he took it for value before maturity, and without notice of any equity, and that he is the owner and has the right to bring suit to enforce collection. Every holder is deemed a holder in due course, and upon the execution of the instrument being proven, every holder is deemed prima facie a holder in due course. Such prima facie evidence is not rebutted in the answer of the defendant denying the ownership of the plaintiff. (Now the plaintiff, having introduced evidence showing that it is a holder in due course and without notice, then the burden would be upon the defendant in this case to satisfy you by the greater weight of the evidence that the plaintiff did take it with notice or that it was not a holder in due course under the law, and the court charges you there is no evidence on the part of the defendant upon which you can answer that issue `No.' Gentlemen of the jury, now, if you believe by the greater weight of the evidence, or if you believe the evidence in the case, the entire evidence in the case, you will answer the third issue `Yes.')" The jury answered the issue "Yes."
The defendant excepted to the latter part of this charge, beginning with "Now the plaintiff" and ending with "Yes," and assigned as error that part of the charge.
There were other exceptions and assignments of error — 23 in all — to the exclusion of evidence, prayers for special instruction and errors in the charge. We will consider them all under the court's charge to the jury on the third issue. Judgment was rendered in favor of the plaintiff, and defendant Mills Company duly excepted, made the usual assignments of error, and appealed to this Court.
The other material facts will be set forth in the opinion.
C. S., 3032. "The holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument." *Page 237 
C. S., 3033. "A holder in due course is a holder who has taken the instrument under the following conditions:
(1) That the instrument is complete and regular upon its face.
(2) That he became the holder of it before it was overdue and without notice that it has been previously dishonored, if such was the fact.
(3) That he took it for good faith and value.
(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."
The plaintiff Finance Company claims it is the holder of the note and title retaining contract of R. E. Zimmerman in due course; that the note is complete and regular on its face, and that it became the holder before it was overdue; that it took the note and title retaining contract for good faith and value; that at the time it took the note it had no notice of any infirmity or defect in the title of the Truck Company negotiating it; that there was no error in the charge of the court below on the third issue, and the judgment should be sustained.
The defendant Mills Company, on the contrary, says that the Finance Company is not a bona fide holder of the note for value, before maturity and in due course; that the note in the possession of the Finance Company is subject to all equities and defenses existing between it and Zimmerman, who was an agent of the Truck Company; that the Finance Company dealing with the Truck Company was not a purchaser, but an agent for collection. These are the contentions. Is there any evidence to support the position of the Mills Company?
In Hancock v. Southgate, 186 N.C. 282, the Court said: "Where there is any evidence to support plaintiff's claim, it is the duty of a judge to submit it to the jury, and the weight of such evidence is for the jury to determine."
In Temple v. LaBerge, 184 N.C. 254, the principle applicable is stated as follows: "The rule prevails with us, and it is supported by the weight of authority elsewhere, that if a bank discounts a paper and places the amount, less the discount, to the credit of the endorser, with the right to check on it, and reserves the right to charge back the amount if the paper is not paid, by express agreement or one implied from the course of dealing, and not by reason of liability on the endorsement, the bank is an agent for collection and not a purchaser. Packing Co. v. Davis,118 N.C. 548; Cotton Mills v. Weil, 129 N.C. 452; Davis v. Lumber Co.,130 N.C. 176, and Bank v. Exum, 163 N.C. 202. Worth v. Feed Co.,172 N.C. 342."
The fact that the officers of the Finance Company testified that its company is the owner of the note, and they purchased it in due course bonafide for value and before maturity, is not conclusive if the Mills *Page 238 
Company should show by facts and circumstances to the contrary. The weight of the evidence, pro and con, was for the jury. What are some of the facts and circumstances relied on by the Mills Company?
Exhibit "F," agreement between Truck Company and Finance Company of 1 April, 1920:
(1) That the Truck Company here undertakes to perform and desires to sell to the Finance Company accounts receivable, notes, leases, mortgages, contracts, and choses in action, hereinafter designated "accounts," evidencing sales and deliveries of personal property.
(2) That the Truck Company will not sell or assign any of its accounts elsewhere without first giving ten days written notice to Finance Company of such intentions.
For the "accounts" the Finance Company is to pay 100 per cent of actual net amounts thereof less charge equal to the legal rate of interest on the purchase-money outstanding during the period it is outstanding; also charge1-30 of 1 per cent of the net face amount of accounts for each day from the date of purchase by until paid to Finance Company, plus $5 per $1,000 on the first $100,000 of accounts purchased within any twelve successive months period. Subject to an additional charge of 1-5 of 1 per cent on the face of all accounts purchased. Ninety per cent of the actual net amount thereof shall be paid in cash upon acceptance of such accounts of the Truck Company. Ten per cent is held back and thereafter applied to the payment of any accounts that are in any manner affected by any breach or violation of any warranty of the Truck Company.
The second article of the said contract, in part, provides: "In order to avoid objections by, and any possible loss of trade from any of its customers through the Finance Company collecting the said accounts direct from the debtors, and to obtain from the Finance Company the right and privilege which is hereby given to make collections at the office of the Truck Company of all accounts sold to the Finance Company, the Truck Company will pay the Finance Company for the salaries and all expenses of travel of auditors of the Finance Company who shall have the right to call every thirty days or oftener and inspect, audit, check and make extracts from the books, accounts, records, orders, original correspondence and other papers of the Truck Company relating to accounts sold hereunder, as provided in the bond hereinafter referred to, or as required and directed by the Finance Company."
There is also this provision in the contract: "Should the debtor named in such account fail or refuse to receive, accept or retain or return the property evidenced by such account, or should said property be rerouted or reconsigned, then the title to said property or property exchanged therefor, with the right to sell or otherwise dispose thereof, *Page 239 
and the title to any new account created through the resale thereof, shall be and remain in the Finance Company."
Exhibit "G" is headed: Original Certificate Cr. 235752 — page ____
Showing reserve 10 per cent taken out.
E. M. Willingham gave an individual "Guaranty and Waiver" bond. The Truck Company also gave a $50,000 surety bond, signed by E. G. Deckner, to the Finance Company.
All this and other matters of the dealings between the Finance Company and the Truck Company was more than a scintilla of evidence to go to the jury, its weight is for them to determine on this aspect of the case whether the bank is an agent for collection and not a holder or purchaser in due course.
The next proposition, under contract Exhibit "F," it provides: "And to obtain from Finance Company the right and privilege which is hereby given
(italics ours), to make collections at the office of the Truck Company of all accounts sold to the Finance Company."
If the Truck Company had the right to make the collection from R. E. Zimmerman of the note and retaining title contract, was Zimmerman a dealer, or was there any evidence that he was the Truck Company's agent in this matter? Was the sale to the defendant Mills Company ratified by the Truck Company? These matters are for a jury to determine under proper instructions in the court below on the hearing.
On this phase of the case, the Mills Company contends: The Truck Company and R. E. Zimmerman had written agreement between them regarding the handling of trucks. The agreement in force at the time, Exhibit "C" and Exhibit "D," which are the same except in the copy describing the territory in which Zimmerman operated there is this clause (Exhibit "C"): "And in any open territory in North Carolina until same is closed with other dealers." Exhibit "D" is the same except in lieu of the words quoted there are these words: "And any other open territory in North Carolina until same is closed by manufacturer to another agent."
The court below ruled out the testimony of J. A. Elliot as to the sign in the store and roads "Agent Superior Motor Trucks."
The court below ruled out the evidence offered as to the sign in the place of business of R. E. Zimmerman having on it "R. E. Zimmerman, Agent of Superior Motor Trucks." Also the evidence that E. M. Willingham, who was president of the Truck Company, sent the sign that was placed in the place of business; also like signs posted along the public highways leading into Thomasville. Also the testimony of R. E. Zimmerman that Willingham visited Thomasville and knew and authorized the sign to be put up and gave him authority to sell the trucks. In Exhibit "D" the words "another agent" are used. *Page 240 
As to the authority of Willingham and Deckner to bind the Truck Company, Exhibit "E" is signed, "Superior Motor Truck Company, by E. M. Willingham, Prest. Attest: E. G. Deckner, Secty." The evidence, if believed, from the record shows that the declarations of these officials were made in line of their official duty. Beck v. Wilkins-Ricks Co., 186 N.C. 213, and cases cited.
We think the evidence ruled out and excepted to in the court below competent, from the view we take of this case.
The competency of the testimony of the officials of the motor company, in the instant case, does not conflict with what was said in Bank v. Mfg.Co., 186 N.C. 744.
In the agreement, Exhibit "E," this language is used: "Should the party (R. E. Zimmerman) of the first part sell the truck on which there is an outstanding note in favor of the party of the second part (Superior Motor Truck Company), immediately upon the sale of said truck he will take up said outstanding note." Although this agreement is dated 11 March, 1918, it is a circumstance, under the facts in this case, to go to the jury, to corroborate R. E. Zimmerman. R. E. Zimmerman testified: "Mr. Willingham (president of the company) and Mr. Deckner (secretary and treasurer of the company) gave me permission to sell all the trucks. Mr. Deckner was in my office at the time the sale of this particular truck was made. Mr. Deckner suggested that I take up the note that was due previous to the note sued on. He was present when the sale was made and knew I got the check, and saw it. This is the check that I showed Mr. Deckner.
"By the Court: What is the date of that? A. 12 May, 1920.
"By the Court: What is the date of this instrument (Exhibit B)?
"By Mr. Smith: The note and contract of conditional sale are dated 17 April, 1920, and the certificate of indebtedness transferring it to the Finance Company, 22 April, 1920.
"Defendant offered in evidence check dated 12 May, 1920 — $1,700."
This testimony was excluded and exception taken in court below. We think this was error.
The testimony of Miss Haynes, whose evidence was excluded, was to this effect: "In May, 1920, I was employed by R. E. Zimmerman, doing stenographic work. I know E. G. Deckner. I met him in office. He remained at Thomasville about ten days. He came to Mr. Zimmerman's office and place of business every day. I heard Deckner say, in regard to the two-ton truck sold to the Amazon Cotton Mills, that it was a quick sale. He saw the check of the Amazon Cotton Mills in the office. The check was on the desk in front of him." This testimony was excluded in the court below. We think this was error. *Page 241 
We think, from the facts and circumstances of this case and the view we take, that the evidence above set forth, which was excluded and like evidence as appears from the record, there was error, and on another trial the evidence should be held competent.
"Where the mortgagee expressly or impliedly consents to a sale of the mortgaged property by the mortgagor, he waives his lien, and the purchaser takes the title free from the same." 11 C. J., 624. Even an unexecuted verbal agreement, made by a mortgagee for a valuable consideration, to release a real estate mortgage, does not come within the statute of frauds.Stevens v. Turlington, 186 N.C. 191.
This evidence would only become material if the jury should find that the Finance Company was not the owner in due course of the Zimmerman note and title retaining contract.
We think the court below was in error in its charge to the jury on the third issue.
In Williams v. Mfg. Co., 177 N.C. 515, Walker, J., says: "There was evidence given for the defendant which conflicted with that introduced by the plaintiff, but the jury alone could settle this conflict; and while the plaintiff did not make out a strong case, but rather a weak one, when we review all the facts in concourse, we cannot withdraw the case from the jury, who are the triers of the facts, if there is any evidence reasonably tending to support the plaintiff's allegations," citing Wittkowsky v.Wasson, 71 N.C. 451; Byrd v. Express Co., 139 N.C. 273, and cases cited.
For the reasons given in this case there must be a
New trial.